eral with sufficient promptness instituted proceedings by action against the bank to procure its dissolution (by reason not only of impairment of its capital but gross insolvency), and the proper distribution of its assets among the creditors entitled to the same. The directors of the bank apparently conceived the idea of influencing the closing up of the bank and taking the property away from the bank superintendent, and they sought to make use of the proceedings for voluntary dissolution to accomplish their purpose. It seems to me they could not accomplish their purpose by any such means. While the provisions of the Code as to the voluntary dissolution of corporations very likely apply to banks as well as other corporations, still they must give way in the case of banks to those provisions of the banking law, which are inconsistent or in conflict with them. It may be doubtful if the proceedings for voluntary dissolution could be instituted at all under the provisions of the Code, after the property and business of the bank had been taken possession of and were held by the bank superintendent; the provision being that "a majority of the directors, trustees, or other officers, having the management of the concerns of a corporation, * * * may make a petition," etc. (Code Civ. Proc. § 2419); but, even if they could be, still the court had no power in such proceedings to appoint receivers, or compel the delivery of the property and assets of the bank to such receivers, without the consent of the bank superintendent. The banking law conferred the power upon the bank superintendent to determine whether he should hold the property to await the determination of the proceedings instituted by the attorney general, and the court could not, in these proceedings, interfere with the custody and control of the property by the bank superintendent, without his consent. The bank superintendent was regarded by the legislature as more competent, from his position and knowledge of banking matters, to determine this question than the court, and the clear design of the banking act was to leave this question to him, and not to the court.

For these three reasons I am of the opinion the order appealed from was properly made, and should be affirmed, with costs.

---

SMITH v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, First Department.    November 13, 1896.)

INSURANCE—DESCRIPTION OF OCCUPATION.
    It is not a false description of occupation, in an application for life insurance, to call one having charge of a gang of laborers an "inspector."

Appeal from trial term, New York county.

Actions by Annie Smith, as administratrix of Peter Smith, deceased, against the Prudential Insurance Company of America, to recover $1,000, the amount of a policy issued by defendant on the life of said Peter Smith. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Wm. O. Campbel, for appellant.

Christopher Fine, for respondent.

INGRAHAM, J.   The action was brought upon a policy of life insurance whereby the defendant insured the life of one Peter Smith in the sum of $1,000, payable at his death to his executors, administrators, and assigns.   Peter Smith died intestate on the 3d of November, 1894.   The defendant sets up several defenses in its answer, but the only ones upon which it sought to defeat the plaintiff's claim was that the policy was issued upon the application of some person, to defendant unknown, whom the defendant then believed to be Peter Smith, but who was not Peter Smith; that such policy was issued upon a medical examination of such unknown person, who declared himself to be Peter Smith, when in fact he was some other person; and, further, that there was a breach of the warranty upon which such policy was granted.

There was evidence upon the trial which tended to show that the Peter Smith who was examined by the medical examiners of the defendant, upon which examination this policy was issued, was not the plaintiff's intestate,—the Peter Smith upon whose death plaintiff demands payment of the policy.   That question, however, was submitted to the jury, the defendant taking no objection or exception to the charge, and making no request to charge except one which was charged by the court; and, the jury having found that the person examined by the physician of the defendant company as the applicant for the insurance was Peter Smith, the deceased, and the husband of the plaintiff, we should not disturb that verdict, as from an examination of the testimony it is clear that the verdict is supported by the evidence.

The other question, as to whether or not there was a breach of the warranty, was also submitted to the jury, the learned judge charging:

"The question, therefore, to be determined by you, is whether the answers to the defendant company were true or not true.   If any of them was untrue, your verdict must be for the defendant.   If they were all true, and the deceased was the real party examined by the defendant company, the plaintiff is entitled to a verdict at your hands for $1,000, with interest."

The only breach of warranty that is insisted upon on this appeal is that, in the application, the assured is called an inspector, while in the claimant's certificate and the attending physician's certificate, included among the proofs of death furnished to the company, he is described as a laborer.   It appeared by the evidence that, at the time of the application for the policy, the deceased worked on the Croton waterworks, having charge of a gang of men working on the Croton water pipes.   We do not think that to describe a man engaged in such an occupation as an inspector is a false description of his occupation.

As to the other representations which are claimed by the defendant to be false, it is sufficient to say that the verdict of the jury is

amply sustained by the evidence. The burden is on the defendant of showing that such representations, or some of them, were false, and it has not sustained that burden.

Upon the whole case, we think no error was committed which requires us to reverse the judgment, and that the verdict of the jury was sustained by the evidence. The judgment is affirmed, with costs. All concur.